IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **KENNETH CASTAGNA,** : | **CIVIL ACTION** |
| Plaintiff, : | |
| : | |
| vs. : | NO.   20-cv-5879 |
| : | |
| **KILOLO KIJAKAZI,** : | |
| **Commissioner of Social Security,** : | |
| Defendant. : | |

## MEMORANDUM OPINION

**LYNNE A. SITARSKI**
**UNITED STATES MAGISTRATE JUDGE**                                                    May 3, 2022

Plaintiff Kenneth Castagna brought this action seeking review of the Commissioner of Social Security Administration's decision denying his claim for Social Security Disability Insurance (SSDI) under Title II of the Social Security Act, 42 U.S.C. §§ 401-433. This matter is before me for disposition upon consent of the parties. For the reasons set forth below, Plaintiff's Request for Review (ECF No. 15) is **DENIED**.

**I.       PROCEDURAL HISTORY**

Plaintiff protectively filed for SSDI, alleging disability since April 1, 2015, due to congestive heart failure, blood clot in the heart, atrial fibrillation and cardiomyopathy. (R. 353-54, 562). Plaintiff's application was denied at the initial level, and Plaintiff requested a hearing before an Administrative Law Judge (ALJ). (R. 157-64). Plaintiff, represented by counsel, and a vocational expert (VE) testified at the November 29, 2017 administrative hearing. (R. 99-127). On January 12, 2018, ALJ Jasper Bede issued a decision favorable to Plaintiff. (R. 138-49). However, on January 31, 2018, the Social Security Administration sent a protest memorandum to the Office of Disability Adjudication Review advising that it could not effectuate ALJ Bede's

decision because it contained an error of law insofar as Plaintiff was not insured on the disability onset date. (R. 216). Accordingly, on June 12, 2018, ALJ Bede issued an Order stating in relevant part:

> On January 12, 2018, the undersigned issued a decision that was fully favorable to the claimant. However, the decision contained a possible factual error regarding the date last insured. Therefore, that decision is being vacated for further development. The claimant will be given the opportunity for a new hearing and a new decision will be issued.

(R. 152).

After ALJ Bede left the agency, Plaintiff's case was reassigned to ALJ Vivian McAneney. (R. 96, 218-37). In the notices scheduling the new hearing, she informed Plaintiff that she would "consider whether you are disabled" and set forth the conditions and steps for making that determination. (R. 220-21, 240-41). The notices further advised of Plaintiff's right to object to the scope of the proceedings. (R. 221, 241). On March 21, 2019, an administrative hearing was held before ALJ McAneney. (R. 72-98). At the hearing she explained, in response to a question from Plaintiff's counsel, that because the prior decision had been vacated she was required to revisit the issue of Plaintiff's impairments "on the evidence that's given to me." (R. 96). Plaintiff's counsel confirmed that he understood. (R. 97). The hearing was adjourned to obtain additional earnings documentation, although ALJ McAneney also observed that, because she had "to review the file for the disability, to determine whether another hearing would be necessary, [it] would be helpful to have updated medical records." (R.96).

On April 19, 2019, ALJ McAneney sent new, substantively identical notices scheduling a second hearing for August 1, 2019. (R. 294-336). Plaintiff and his counsel attended the hearing, at which ALJ McAneney reiterated at the outset that she was not bound by the prior decision and that she would conduct "an independent review" of the record evidence and testimony. (R. 41).

As he had at the initial hearing before ALJ Bede, Plaintiff testified regarding his medical conditions. (R. 51-64). On August 26, 2019, ALJ McAneney issued a decision unfavorable to Plaintiff. (R. 20-37). Plaintiff appealed the ALJ's decision, and the Appeals Council denied Plaintiff's request for review on September 25, 2020, thus making the ALJ's decision the final decision of the Commissioner for purposes of judicial review. (R. 1-7).

On November 23, 2020, Plaintiff filed a complaint in the United States District Court for the Eastern District of Pennsylvania. (Compl., ECF No. 1). On August 13, 2021, Plaintiff filed a Brief and Statement of Issues in Support of Request for Review. (Pl.'s Br., ECF No. 15). The Commissioner filed a Response on September 13, 2021. (Resp., ECF No. 16). On September 29, 2021, Plaintiff consented to my jurisdiction pursuant to 28 U.S.C. § 636(C). (Consent, ECF No. 19). Plaintiff filed a Reply on October 29, 2021. (Reply, ECF No. 24).

## II.  FACTUAL BACKGROUND

The Court has considered the administrative record in its entirety and summarizes here the evidence relevant to the instant request for review.

Plaintiff was born on November 2, 1967, and was 50 years old on the date last insured. (R. 22). Plaintiff previously worked in property restoration. (R. 563).

### A.  Medical Evidence

On August 3, 2015, Plaintiff presented to the St. Mary Medical Center emergency room in Langhorne, Pennsylvania with dyspnea after being diagnosed with an irregular heartbeat earlier in the summer. (R. 632). Cardiac monitoring showed atrial fibrillation with new onset rapid ventricular response. (R. 627). He was admitted to the hospital with suspected congestive heart failure. (R. 639). While in the hospital, an electrocardiogram (EKG) revealed a mildly dilated left ventricle and atrium with severely depressed left ventricular systolic function

3

(ejection fraction of 25 percent). (R. 637). Richard Kass, D.O., performed a cardiac catherization, which showed moderately-to-severely impaired left ventricular systolic function (ejection fraction of 30 percent). (*Id.*). On August 7, 2015, Plaintiff was discharged with a LifeVest due to episodic non-sustained ventricular tachycardia. (*Id.*).

On August 20, 2015, Plaintiff had a visit with Dr. Kass at Newtown Cardiology Associates in Langhorne, Pennsylvania. (R. 687). Dr. Kass recorded that Plaintiff's dyspnea had significantly improved. (*Id.*). On September 11, 2015, an EKG showed atrial fibrillation with left ventricular hypertrophy, moderate dilation and moderate-to-severely reduced systolic function (ejection fraction of 25 to 35 percent). (R. 685). On October 21, 2015, Dr. Kass wrote an unaddressed to-whom-it-may-concern letter stating that Plaintiff could not work at that time due to ongoing exertional dyspnea. (R. 775). Plaintiff underwent successful cardioversion from atrial fibrillation to sinus rhythm on October 22, 2015. (R. 747). On November 10, 2015, Plaintiff began taking Lasix, 80 milligrams daily, for three days, which was then reduced to 40 milligrams. (R. 749). He also reported continuing to wear his LifeVest. (*Id.*).

On December 5, 2015, cardiac electrophysiologist Steven Kutalek, M.D., completed a Cardiac Impairment Questionnaire for Plaintiff. (R. 754-59). He noted a diagnosis for Class III congestive heart failure. (R. 754). He recorded that Plaintiff suffered from shortness of breath, cardiomegaly, arrhythmia and edema. (R. 755). He estimated that Plaintiff could sit or stand and walk for less than an hour per eight-hour workday and never lift or carry anything of any weight. (R. 756). He observed that Plaintiff was obese but that his obesity was not related to his heart problems. (*Id.*). He predicted that a competitive work environment would increase Plaintiff's shortness of breath and result in fatigue and cardiac stress. (R. 757). He stated that Plaintiff's symptoms would frequently interfere with his ability to work, that he would need to take unscheduled 15-minute breaks every one to two hours and that he would likely miss work

4

one day per month. (R. 757-58).

Plaintiff's LifeVest was discontinued after a December 7, 2015 EKG revealed a significantly increased ejection fraction of 49.5 percent. (R. 763). A December 21, 2015 follow up letter from Richard Leshner, D.O., to Robert Jambro, M.D., noted that Plaintiff had significantly improved dyspnea, albeit with some occasional productive coughing. (R. 761).

On January 15, 2016, Harshadkumar Patel, M.D., the state agency medical consultant, provided his opinion. (R. 128-36). Dr. Patel concluded that Plaintiff's statements regarding the intensity, persistence and limiting effects of his symptoms were not supported by the objective medical evidence alone because of his activities of daily living (ADLs), precipitating and aggravating factors, medication, and other treatment. (R. 132). He opined that Plaintiff could lift and carry up to 10 pounds frequently and up to 20 pounds occasionally and that in an eight-hour workday he could sit for up to six hours or stand and walk for up to six hours. (R. 133). He stated that Plaintiff could occasionally climb ramps, stairs, ladders, ropes and scaffolds, balance, stoop, kneel, crouch, or crawl. (*Id.*). Dr. Patel indicated that Plaintiff had no manipulative, visual, communicative or environmental limitations. (R. 134). He further explained that Plaintiff's ejection fraction and dyspnea had significantly improved and that as of December 21, 2015, he had experienced no angina, palpitations, lightheadedness, presyncope, syncope, edema, or LifeVest shocks. (*Id.*). In addition, he noted that although Plaintiff had atrial fibrillation, he had a well-controlled heart rate and normal blood pressure and he was not in heart failure. (*Id.*).

Plaintiff's dyspnea continued to improve at visits with Dr. Leshner during 2016 and the first half of 2017. (R. 788, 791, 793, 799, 857, 860, 863). During these visits, he denied anginal chest discomfort, palpitations, lightheadedness, near syncope, syncope, orthopnea, paroxysmal nocturnal dyspnea, edema, fever, chills, bleeding, bruising and focal neurologic symptoms. (*Id.*). He was described as "relatively stable," "doing well," "quite better," "fairly well" or "relatively

well." (R. 791, 793, 799, 800). A December 9, 2016 EKG showed mild concentric left ventricular hypertrophy but that the ventricle was normal size with an improved ejection fraction of 60 to 65 percent. (R. 796).

On November 4, 2017, Plaintiff complained to Dr. Leshner of dyspnea on exertion and cough. (R. 874). An EKG showed atrial flutter with a rapid ventricular response. (*Id.*). Dr. Leshner stated that these abnormalities were likely attributable to increased alcohol and caffeine intake during and after a trip to Florida. (*Id.*). Dr. Leshner advised Plaintiff to cease all alcohol, caffeine and nicotine intake. (*Id.*). On November 14, 2017, Plaintiff underwent cardioversion from atrial fibrillation to sinus rhythm. (R. 872).

On June 20, 2018, an EKG again showed atrial fibrillation. (R. 882). Plaintiff underwent an ablation on July 11, 2018. (R. 884). On August 8, 2018, he reported to Heath Saltzman, M.D., at Drexel Cardiology in Langhorne, Pennsylvania, that he was feeling better with no palpitations. (R. 910). On October 30, 2018, Plaintiff reported dizziness. (R. 916). It was attributed to a prescription medication, which was then reduced. (*Id.*).

   **B.**  **Non-Medical Evidence**

The record also contains non-medical evidence. In an Adult Function Report dated October 22, 2015, Plaintiff indicated that he was limited in his physical activity due to cardiovascular disease, including a 25 percent ejection fraction, and wearing a LifeVest. (R. 572). He stated that he was unable to lift or carry anything over five pounds, climb steps, or walk for long periods. (R. 573). However, he checked no boxes indicating any difficulties with personal care. (*Id.*). He reported making his own meals weekly but that he was limited in how long he could stand during food preparation. (R. 574). He reported being able to drive, manage money, shop by mail, watch television and movies, use a computer and sometimes visit with friends and family. (R. 575-76). Plaintiff noted limitations in lifting, squatting, standing,

reaching, walking, kneeling and stair climbing. (R. 577). He indicated that he could walk five to seven minutes before needing to rest for 15 to 20 minutes. (*Id.*). He recorded that he had no issues with paying attention, following written or spoken instructions, getting along with authority figures, or handling stress or changes in routine. (R. 578).

At the November 29, 2017 administrative hearing before ALJ Bede, Plaintiff testified that his ADLs included preparing breakfast for his children and himself, personal care, watching television, assisting his children with homework, reheating leftovers for dinner, driving as necessary, walking his dogs to the end of the driveway, and carrying groceries. (R. 112-16, 121-23). He stated that he had difficulty sleeping. (R. 115). He indicated that he suffered from fatigue, anxiety, shortness of breath, stiffness after sitting too long and drowsiness from medication. (R. 116-20). He stated that he could lift and carry up to 25 pounds. (R. 121).

At the August 1, 2019[1] administrative hearing before ALJ McAneney, Plaintiff testified that he suffers from various medication side effects, including dizziness, drowsiness, upset stomach and lethargy. (R. 53). He indicated he could not stand for prolonged periods or walk on an incline. (R. 54). He stated that he still has heart flutters, albeit not on a regular basis, and cardiomyopathy but that an ablation the prior summer had stopped his atrial fibrillation. (R. 58). He reported that his heart was "not functioning 100 percent" and that his ejection fraction was not 100 percent. (R. 60). Plaintiff testified that his ADLs included cooking "a little bit," reading, watching television, running errands and driving his children locally. (R. 63). He complained of concentration difficulties. (R. 63).

---

[1] Plaintiff also testified at the March 21, 2019 administrative hearing before ALJ McAneney, but his testimony was limited to matters relating to his insured status. (R. 82-97).

**III.     ALJ DECISION**

Following the administrative hearing held on August 1, 2019, ALJ McAneney issued a decision in which she made the following findings:

1. The claimant last met the insured status requirements of the Social Security Act on December 31, 2017.

2. The claimant did not engage in substantial gainful activity during the period from his alleged onset date of April 1, 2015 through his date last insured on December 31, 2017.

3. Through the date last insured, the claimant had the following severe impairments: Cardiomyopathy, Paroxysmal Atrial Fibrillation, Ventricular Tachycardia, Hypertension, and Nonobstructive Coronary Artery Disease.

4. Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

5. After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) which involves occasional postural activities with the exception of no climbing of ladders, ropes, or scaffolds; no exposure to extreme heat, humidity, or wetness, no work hazards; and no complex or detailed instructions.

6. Through the date last insured, the claimant was unable to perform any past relevant work.

7. The claimant was born on November 2, 1967 and was 50 years old, which is defined as an individual closely approaching advanced age, on the date last

>   insured.
>
> 8. The claimant has at least a high school education and is able to communicate in English.
>
> 9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills.
>
> 10. Through the date last insured, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed.
>
> 11. The claimant was not under a disability, as defined in the Social Security Act, at any time from April 1, 2015, the alleged onset date, through December 31, 2017, the date last insured.

(R. 20-37). Accordingly, ALJ McAneney found Plaintiff was not disabled through December 31, 2017, the date last insured. (R. 32).

### IV.   LEGAL STANDARD

To be eligible for benefits under the Social Security Act, a claimant must demonstrate to the Commissioner that he cannot engage in substantial gainful activity because of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of at least 12 months. 42 U.S.C. § 1382c(a)(3)(A). A five-step sequential analysis is used to evaluate a disability claim:

>   First, the Commissioner considers whether the claimant is currently

> engaged in substantial gainful activity. If she is not, then the Commissioner considers in the second step whether the claimant has a "severe impairment" that significantly limits her physical or mental ability to perform basic work activities. If the claimant suffers a severe impairment, the third inquiry is whether, based on the medical evidence, the impairment meets the criteria of the impairment listed in the "listing of impairments," . . . which result in a presumption of disability, or whether the claimant retains the capacity to work. If the impairment does not meet the criteria for a listed impairment, then the Commissioner assesses in the fourth step whether, despite the severe impairment, the claimant has the residual functional capacity to perform her past work. If the claimant cannot perform her past work, then the final step is to determine whether there is other work in the national economy that the claimant can perform.

*Sykes v. Apfel*, 228 F.3d 259, 262-63 (3d Cir. 2000); *see also* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The disability claimant bears the burden of establishing steps one through four. If the claimant is determined to be unable to resume previous employment, the burden shifts to the Commissioner at step five to establish that, given the claimant's age, education, work experience, and mental and physical limitations, she is able to perform substantial gainful activities in jobs existing in the national economy. *Poulos v. Comm'r. of Soc. Sec.*, 474 F.3d 88, 92 (3d Cir. 2007).

Judicial review of a final decision of the Commissioner is limited. A district court is bound by the factual findings of the Commissioner if they are supported by substantial evidence and decided according to correct legal standards. *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999). Substantial evidence is "more than a mere scintilla" and "such relevant evidence as a reasonable mind might accept as adequate." *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 118 (3d Cir. 2000) (citations omitted). Even if the record could support a contrary conclusion, the decision of the ALJ will not be overruled as long as there is substantial evidence to support it. *Simmonds v. Heckler*, 807 F.2d 54, 58 (3d Cir. 1986). The court has plenary review of legal issues. *Schaudeck v. Comm'r of Soc. Sec.*, 181 F.3d 429, 431 (3d Cir. 1999).

## V.     DISCUSSION

In his request for review, Plaintiff raises a single claim: ALJ McAneney's decision that he is not disabled violates the "law of the case" doctrine in light of ALJ Bede's earlier contrary decision. (Pl.'s Br., ECF No. 15, at 5-10). In his reply in support of his request, he further argues that substantial evidence does not support ALJ McAneney's decision. (Reply, ECF No. 24, at 5-6).[2]

### A.     Law of the Case Doctrine

Under the law of the case doctrine, "when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages of the same case." *Anderson v. C.I.R.*, 698 F. 3d 160, 166-67 (3d Cir. 2012) (quoting *Arizona v. California*, 460 U.S. 605, 618 (1983)). The doctrine does not restrict a court's authority to revisit settled legal issues but rather governs the exercise of its discretion to do so. *Pub. Interest Research Grp. of N.J., Inc. v. Magnesium Elektron*, 123 F.3d 111, 116 (3d Cir. 1997). As the Supreme Court has explained, "[a] court has the power to revisit prior decisions of its own or of a coordinate court in any circumstance, although as a rule, courts should be loathe to do so in the absence of

---

[2] Plaintiff contends that this issue is properly before this Court because "an appeal filed to the federal court is an objection that the ALJ's decision was not supported by substantial evidence," apparently even if, as is the case here, the claimant does not raise the issue in his or her request for review. (Reply, ECF No. 24, at 7). Plaintiff cites no authority for this proposition, and Third Circuit case law suggests that the substantial evidence issue is not automatically preserved by virtue of the appeal. *See Davis v. Comm'r Soc. Sec.*, 849 F. App'x 354, 358-59 (3d Cir. 2021) (concluding that the claimant had "forfeited" the issue where he failed to develop his argument that the ALJ decision lacked substantial evidence, but nonetheless finding in a footnote that there was substantial evidence). Nonetheless, in light of the circuit court's consideration of the issue in *Davis*, and the fact that the Commissioner raised the issue in her response, the Court will address Plaintiff's substantial evidence challenge. (*See* Resp., ECF No. 16, at 10-13; *see also Averhart v. Commc'ns Workers of Am.*, No. 10-06163, 2013 WL 393864, at *5 (D.N.J. Jan. 30, 2013) ("new reply brief arguments [may] be appropriately raised in response to submissions by the opposing party") (citing *Bayer AG v. Schein Pharm., Inc.*, 129 F. Supp. 2d 705 (D.N.J. 2001))).

11

extraordinary circumstances such as where the initial decision was clearly erroneous and would work a manifest injustice." *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 816 (1988) (citing *Arizona*, 460 U.S. at 618 n.8). Other such circumstances may include new evidence or a supervening change in the law. *In re Pharmacy Benefit Managers Antitrust Litig.*, 582 F.3d 432, 439 (3d Cir. 2009).

Plaintiff argues that ALJ Bede's decision is the law of the case in this matter because it conclusively established that he was disabled and that the subsequent Order vacating that decision "merely dissected the 'coverage' and/or 'earnings' issues, not disability." (Pl.'s Br., ECF No. 15, at 5). He posits that the subsequent resolution of these issues in his favor only solidified his claim for relief and that ALJ McAneney lacked authority to review other aspects of his case, such as his disability status. (*Id.* at 5, 9). He cites cases for the proposition that the law of the case doctrine applies to ALJ decisions in Social Security cases and that, on remand, an ALJ is prohibited from revisiting determinations that were not deemed erroneous by the reviewing district court. (*Id.* at 6-7 (citations omitted)). Plaintiff further submits that if a court exercises its discretion to reopen a settled issue notwithstanding the doctrine, it must explain its reasons for doing so and take steps to avoid any prejudice resulting from reliance on the earlier determination. (*Id.* at 8-9 (citing *Roberts v. Ferman*, 826 F.3d 117, 126 (3d Cir. 2016) (additional citations omitted))). He notes that ALJ McAneney's decision does not provide such an explanation, nor is it based on new evidence. (*Id.* at 9-10).

The Commissioner responds that ALJ Bede vacated the decision upon which Plaintiff relies and that both ALJs advised Plaintiff that a new, *de novo* decision, in which his disability would again be considered pursuant to the five-step evaluation process, would be issued. (Resp., ECF No. 16, at 3-5). She points out that Plaintiff was afforded the opportunity to object (but did not), as well as the opportunity to submit new evidence, and that his counsel communicated his

understanding of the process to ALJ McAneney. (*Id.* at 4). Citing cases from the Supreme Court, the Third and Eleventh Circuit Courts of Appeal, and this district, she observes that a vacated decision may not serve as the basis for application of the law of the case doctrine. (*Id.* at 5, 7 (citations omitted)). The Commissioner distinguishes Plaintiff's cited cases on the grounds that "these decisions turned on findings that a federal district court had only remanded an ALJ decision for limited purposes and thus *affirmed* other aspects of the ALJ's decision, making these *court-affirmed*, findings the 'law of the case.'" (*Id.* at 5-6 (citations omitted) (emphasis in original)). She notes that in such cases the prohibition against further review comes from the remand order "'explicitly or by necessary implication' bar[ring] re-litigation of certain issues," but in this case no such remand order exists and, even if ALJ Bede's order vacating his decision could be analogized to one, it specifically promised the issuance of a "new decision" rather than barred re-litigation in any way. (*Id.* at 6 (quoting *Alicea v. Comm'r of Soc. Sec.*, 855 F. App'x 494, 496 (11th Cir. 2021))).

  The Commissioner also distinguishes *Roberts* and similar cases cited by Plaintiff because: (1) those cases involve scenarios in which federal district courts have reconsidered prior summary judgment rulings pursuant to the Federal Rules of Civil Procedure, whereas Social Security cases are governed by their own regulations and procedural rules; (2) even if the cases were not inapposite for this reason, ALJ Bede provided the necessary "*procedural* basis for reconsidering the prior ruling" when he explained that it contained a possible factual error regarding Plaintiff's insured status; and (3) Plaintiff suffered no prejudice because he was repeatedly warned that his disability status remained at issue. (*Id.* at 7-8 (emphasis in original)). She explains that ALJ McAneney was not required to expound upon why she "essentially overturned" ALJ Bede's vacated decision because there was no extant determination to undo. (*Id.* at 7 (quoting Pl.'s Br., ECF No. 15, at 8)). Further, the Commissioner observes that in

13

response to ALJ McAneney's warnings that his disability status remained undetermined Plaintiff lodged no objection and in fact submitted new evidence in support of his claim. (*Id.* at 8-9).

Plaintiff does not address the Commissioner's cited cases in his reply. Instead, he restates the background law regarding the law of the case doctrine and rehashes the discussion of his previously cited cases prohibiting ALJs from altering earlier determinations not undone by the reviewing district court. (Reply, ECF No. 24, at 2-5). He claims that the two ALJ decisions should be viewed as a "single continuing lawsuit" "worthy of the law of the case doctrine" because they were based on the same facts and evidence. (*Id.* at 3). He also repeats his argument that ALJ McAneney was required but failed to explain why she reached a contrary decision. (*Id.*). Lastly, he observes that Social Security regulations allow for the application of federal circuit court case law via the issuance of acquiescence rulings where a circuit court renders a decision conflicting with those regulations. (*Id.* at 5). He maintains that it is not "unprecedented" for federal courts "to acknowledge a flaw in the Social Security regulations, and then render conflicting decisions, which the SSA will then issue an acquiescence ruling to address," however, he does not point to an acquiescence ruling applicable to this case. (*Id.*).

It is well-settled that a vacated decision does not give rise to application of the law of the case doctrine. *Johnson v. Bd. of Educ. of Chi.*, 457 U.S. 52, 53-54 ("Because we have vacated the Court of Appeals' judgments in this case, the doctrine of the law of the case does not constrain either the District Court or, should an appeal subsequently be taken, the Court of Appeals."); *De Nafo v. Finch*, 436 F.3d 737, 740 (3d Cir. 1971) (finding that the argument that the law of the case doctrine applied "ha[d] no merit since the court below vacated its original judgment"); *Leader v. Apex Hosiery Co.*, 108 F.2d 71, 81 (3d Cir. 1939) (a vacated order "is no longer . . . law of the case"). For an earlier decision, including one by an ALJ in the Social Security context, to serve as the law of the case, it "must be extant." *Alicea v. Comm'r of Soc.*

14

*Sec.*, 855 F. App'x 494, 496 (11th Cir. 2021) (quoting *Zuniga v. Comm'r. of Soc. Sec.*, 772 Fed. App'x 870, 871 (11th Cir. 2019)). However, "a vacated ruling is 'officially gone,' has 'no legal effect whatever,' '[is] void,' and '[n]one of the statements made [therein] has any remaining force.'" *Id.* (quoting *United States v. Sigma Int'l, Inc.*, 300 F.3d 1278, 1280 (11th Cir. 2002)); *see also In re Smith*, 165 F. App'x 961, 967 (3d Cir. 2006) ("the slate was wiped clean" by the vacating of the underlying decision, such that "[t]he law-of-the-case doctrine was not in play").

As the Commissioner points out, Plaintiff's cited cases purportedly holding that the law of the case doctrine prohibits review of determinations that have not been deemed erroneous all involved district court remands on limited grounds such that the reviewing court had implicitly affirmed these determinations, thus prohibiting further review of them by the ALJ. *See Stacy v. Colvin*, 825 F.3d 563, 567 (9th Cir. 2016) (concluding that the law of the case doctrine potentially applied to prohibit a subsequent ALJ from revisiting settled Step 4 determinations when the district court remand was only to revisit the Step 5 determination, but finding that the doctrine did not apply due to the "new evidence" exception); *Calderon v. Astrue*, 683 F. Supp. 2d 273, 276-77 (E.D.N.Y. 2010) ("the Court's mandate was merely to correct a procedural error in [the] step-five determination; it was not an invitation to revisit the [earlier] decision in its entirety"); *Ischay v. Barnhart*, 383 F. Supp. 2d 1199, 1213 (C.D. Cal. 2005) ("to the extent the ALJ reopened the case beyond the issues identified in the [prior] Orders of this Court, he . . . adjudicated issues already settled by the law of the case"); *Ruiz v. Apfel*, 24 F. Supp. 2d 1045, 1050 (C.D. Cal. 1998) ("The remand order did not authorize the Appeals Council or the ALJ to revisit the previous step-four determination that plaintiff could not perform her past relevant work.") (internal citation omitted); *Holst v. Bowen*, 637 F. Supp. 145, 147 (E.D. Wash. 1986) (holding that the ALJ could not revisit whether the claimant was disabled during an earlier

period where "[t]he unambiguous tenor of the order of remand necessarily assumed the validity of the finding that claimant was disabled" during that period).  In this case, there was no district court remand order specifying the failings in the initial ALJ decision and thereby implicitly affirming the remainder.  As noted, ALJ Bede had already rendered the first decision a nullity in its entirety.  *Alicea*, 855 F. App'x at 496.

Plaintiff's remaining argument for application of law of the case is without merit.  He quotes *Roberts* for the proposition that, although the law of the case doctrine never prohibits a court from reconsidering a prior decision, "when a court does so, it must explain on the record why it is doing so and take appropriate steps so that the parties are not prejudiced by reliance on the prior ruling."[3]  (Pl.'s Br., ECF No. 15, at 9-10 (quoting 826 F.3d at 126) (internal citation omitted)).  The parties dispute whether *Roberts* applies, with the Commissioner asserting that procedural rules governing federal courts in Social Security administrative matters are supplied by the Social Security regulations and procedures, not the Federal Rules of Civil Procedure, and the Commissioner countering that "the Social Security regulations authorizes [sic] the application of circuit court law" if the Social Security Administration issues an acquiescence ruling addressing the judicial decision.  (Resp., ECF No. 16, at 7; Reply, ECF No. 24, at 5 (citing 20 C.F.R. § 416.1485)).  Plaintiff points to no applicable acquiescence ruling in this case, but even if *Roberts* is not inapplicable for that reason, it has no bearing here because, as explained

---

[3] Plaintiff also cites *Krueger Associates, Inc. v. American District Telegraph Co. of Pennsylvania*, 247 F.3d 61, 65 (3d Cir. 2001), apparently for the same proposition. (Pl.'s Br., ECF No. 15, at 9).  This case noted, in a peripheral issue in the opinion, that the law of the case doctrine did *not* prohibit a trial court from reconsidering a renewed summary judgment motion filed with the benefit of discovery.  *Krueger Assocs., Inc.*, 247 F.3d at 65.  But this is a different proposition that seems wholly inapplicable here.  In any event, to the extent that Plaintiff believes that this case stands for the same proposition as *Roberts*, his reliance on it is equally misplaced for the reasons stated herein.

above, the law of the case doctrine is not implicated in this matter. *See Roberts*, 826 F.3d at 126 (requiring an explanation and steps to avoid prejudice only when a court opts not to apply the otherwise applicable law of the case doctrine).[4]

Because the law of the case doctrine does not apply to ALJ Bede's vacated decision, ALJ McAneney did not err in reconsidering Plaintiff's disability status. Accordingly, the Court will not remand this matter on the basis of the doctrine.

### B. Substantial Evidence

A district court is bound by the factual findings of the Commissioner if they are supported by substantial evidence and decided according to correct legal standards. *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999). Substantial evidence is defined as the relevant evidence which a reasonable mind might accept as adequate to support a conclusion. *Pierce v. Underwood*, 487 U.S. 552, 565, 108 S.Ct. 2541, 101 L.Ed.2d 490 (1988); *Morales v. Apfel*, 225 F.3d 310, 316 (3d Cir. 2000). Substantial evidence consists of more than a mere scintilla of evidence, but is less than a preponderance of the evidence. *Pierce*, 487 U.S. at 565; *Morales*, 225 F.3d at 316.

The Third Circuit has instructed, "A single piece of evidence will not satisfy the substantiality test if the [Commissioner] ignores or fails to resolve a conflict created by countervailing evidence. Nor is evidence substantial if it is overwhelmed by other evidence . . . or if it really constitutes not evidence but mere conclusion." *Kent v. Schweiker*,

---

[4] Nonetheless, the Commissioner observes that ALJ Bede explained the procedural basis for vacating his decision – the need to correct "a possible factual error regarding the date last insured" – and that Plaintiff and his counsel received repeated warnings about the *de novo* nature of the continuing proceedings, thus ensuring no prejudicial reliance on the earlier vacated decision. (Resp., ECF No. 16, at 7-9). Because *Roberts* is inapplicable, the Court need not decide if this explanation and these warnings were sufficient.

17

710 F.2d 110, 114 (3d Cir. 1983).  Thus, the substantial evidence standard embraces a qualitative review of the evidence, and not merely a quantitative approach.  *Id.*; *Smith v. Califano*, 637 F.2d 968, 970 (3d Cir. 1981).

It is not the role of the Court to re-weigh the evidence of record or substitute its own conclusions for that of the ALJ.  *See e.g., Burns v. Barnhart*, 312 F.3d 113, 118 (3d Cir. 2002).  If the ALJ's conclusion is supported by substantial evidence, this Court may not set aside the Commissioner's decision, even if it would have decided the factual inquiry differently.  *Hartranft*, 181 F.3d at 360.  This presumption applies both to findings of fact and to inferences reasonably drawn from that evidence.  *See Fargnoli*, 247 F.3d at 38 ("[w]here the ALJ's findings of fact are supported by substantial evidence, we are bound by those findings, even if we would have decided the factual inquiry differently").

As already noted, Plaintiff did not contend in his opening brief that ALJ McAneney's decision was not based on substantial evidence.  (*See generally*, Pl.'s Br., ECF No. 15).  Rather, the Commissioner raised the issue in her response, asserting that ALJ McAneney had reasonably determined that Plaintiff's treatment history, the objective medical evidence and the medical opinions and prior administrative medical findings did not support a finding of disability.  (Resp., ECF No. 16, at 10-13).  Plaintiff counters in his reply that "substantial evidence does not support the second ALJ's decision, but supports the finding that Plaintiff was disabled under the Social Security act," however, his supporting arguments largely center around whether the law of the case doctrine and new evidence exception thereto apply.  (Reply, ECF No. 24, at 5).  He rejects the Commissioner's contention that the record shows that his condition improved between 2015 and 2017, instead maintaining that ALJ Bede already had access to this information when he issued his decision in January 2018.  (*Id.* at 6).  He observes that the new evidence submitted at the hearing before ALJ McAneney pertained to his last date insured and that "no new evidence

18

was introduced regarding the claimant's disability that would allow the law of the case doctrine to be violated." (*Id.*). He insists that ALJ McAneney could not reach a different conclusion regarding his disability status absent new evidence or other "exceptional circumstances." (*Id.*).

Although it remains unclear precisely what portion or portions of ALJ McAneney's decision Plaintiff believes were not backed by substantial evidence, the Court disagrees with Plaintiff's position. ALJ McAneney determined that Plaintiff had the RFC to perform light work with limited exceptions, reflecting his inability to climb ladders, ropes and scaffolds; tolerate exposure to extreme heat, humidity and wetness; and carry out complex or detailed instructions. (R. 28). She explained that this RFC was supported by Plaintiff's treatment history, the objective clinical findings, Plaintiff's improvement and his subjective reports. (R. 30). As set forth in the decision, this treatment history included fitting for a LifeVest in August 2015, successful cardioversions from atrial fibrillation to sinus rhythm in October 2015 and November 2017, a cardiac ablation in July 2018, a prescription for Lasix, and a medication adjustment in October 2018, as well as his lack of any need for substantial treatment throughout much of 2016 and 2017. (R. 29, 637, 747, 749, 872, 884, 916). ALJ McAneney also cited objective clinical findings, such as his ejection fraction of 49 percent in December 2015 and 60 to 65 percent in December 2016 and, at least from 2016 onwards, his general lack of angina, palpitations, lightheadedness, near syncope, syncope, orthopnea, paroxysmal nocturnal dyspnea, edema, fever, chills, bleeding, bruising, or focal neurologic symptoms. (R. 29, 134, 763, 796, 910).

ALJ McAneney further observed that Plaintiff's condition improved substantially throughout the alleged disability period, as evidenced by his ejection fraction increasing dramatically from a low of 25 to 35 percent in September 2015 to 60 to 65 percent by December 2016, his discontinuance of the LifeVest in December 2015, and his generally improved dyspnea and lack of need for significant treatment throughout 2016 and 2017. (R. 29, 134, 685, 761, 763,

788, 791, 793, 799, 857, 860). Finally, she noted Plaintiff's own subjective statements and testimony regarding his symptoms and the limitations imposed by them, such as his self-reported improved dyspnea, his denial of ongoing related symptoms, his August 2018 report to Dr. Saltzman that he was "feeling better," and his ADLs of occasional driving, some cooking, reading, watching television, running errands and shopping with his partner. (R. 28-29, 134, 761, 788, 791, 793, 799, 857, 860, 863, 910).

Accordingly, ALJ McAneney's decision is backed by substantial evidence. The Court therefore declines to remand this matter on the basis of its purported absence.

## VI. CONCLUSION

For the reasons set forth above, Plaintiff's request for review is **DENIED**. An appropriate Order follows.

BY THE COURT:

/s/ Lynne A. Sitarski
LYNNE A. SITARSKI
United States Magistrate Judge